UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTGOMERY BLAIR SIBLEY,**<br><br>Plaintiff,<br><br>v.<br><br>**JUDITH N. MACALUSO, et al.,**<br><br>Defendants. | Civil Action No. 13-319 (JDB) |

## MEMORANDUM OPINION

This case arises out of two unrelated legal matters that plaintiff Montgomery Blair Sibley brought before the D.C. Superior Court and D.C. Court of Appeals. Dissatisfied with various aspects of both matters, Sibley sued D.C. Superior Court Judge Judith N. Macaluso ("Judge Macaluso"), judges on the D.C. Court of Appeals ("Court of Appeals judges"),[1] and "Jane Doe" – an unidentified D.C. Court of Appeals clerk. Sibley seeks monetary damages and declaratory relief from both Judge Macaluso and the Court of Appeals judges, and just monetary damages from "Jane Doe." Before the Court is defendants' motion to dismiss for failure to state a claim and for lack of standing. For the reasons set forth below, the Court will grant the motion to dismiss.

---

[1] The Court of Appeals judges include Chief Judge Eric T. Washington; Associate Judges Stephen H. Glickman, John R. Fisher, Anna Blackburne-Rigsby, Phyllis D. Thompson, Kathryn A. Oberly, Corinne A. Beckwith, Catharine F. Easterly, and Roy W. McLeese; and Senior Judges John A. Terry and Inez Smith Reid.

1

## BACKGROUND

Pro se plaintiff Sibley is a resident of the District of Columbia and a frequent filer of lawsuits. After initiating separate cases in the D.C. Superior Court and D.C. Court of Appeals, he filed suit in this Court relating to events that transpired in the two other lawsuits.

### I.     Claims against Judge Macaluso arising from the St. Albans matter

Sibley filed a civil action against St. Albans School, the Cathedral Church of St. Peter and St. Paul, and the Protestant Episcopal Cathedral Foundation (the "St. Albans matter") in D.C. Superior Court on April 6, 2010. See Am. Compl. [Docket Entry 2] ¶ 8(a) (Mar. 21, 2013). The St. Albans matter was assigned to Judge Macaluso. See id. Sibley alleges that, on May 8, 2012, he requested in writing that Judge Macaluso produce a copy of her trial calendar. See id. ¶ 8(c). Sibley further alleges that he received no response from Judge Macaluso. See id. ¶ 8(d). At a hearing on the St. Albans matter on June 15, 2012, Sibley again requested – by oral motion – that Judge Macaluso release a copy of her trial calendar. See id. Judge Macaluso denied the motion. See id. Sibley claims that Judge Macaluso deprived him of his First Amendment rights and requests nominal, actual, and punitive damages totaling $1,075,001.00 as well as a declaratory judgment against Judge Macaluso. See id. ¶¶ 11-13, 15-17.

### II.    Claims against the Court of Appeals judges and "Jane Doe" arising from the BOEE matter

Sibley's claims against the Court of Appeals judges and "Jane Doe" stem from a suit he filed against the District of Columbia Board of Elections and Ethics ("the BOEE matter") on November 30, 2012. See id. ¶ 9(a). The BOEE matter sought to challenge the ability of President Obama to continue to hold the office of president. See Defs.' Mot. to Dismiss ("Defs.' Mot.") [Docket Entry 6] at 3 (Apr. 11, 2013). At the same time he filed the BOEE matter, Sibley filed a motion for expedited briefing, oral argument, and resolution, asserting that "[t]ime is

plainly of the essence: The next President of the United States is due to be sworn into that office on January 20, 2013 – some short fifty-one (51) days away. The importance of a prompt resolution of the federal constitutional questions presented by this case cannot be overstated." See Am. Compl. ¶ 9(a) (emphasis in original). Sibley alleges that the Court of Appeals judges failed to address this motion. See id.

Sibley further contends that, when he called the D.C. Court of Appeals Clerk's Office on February 1, 2013, he was told that the court had entered an order on the BOEE matter on January 16, 2013.[2] See id. ¶ 9(b). He subsequently obtained a copy of the purported January 16, 2013 per curiam "order" from BOEE counsel.[3] See id. ¶ 9(c). The "order" – which defendants note was never actually entered on the docket – professes to rule on Sibley's "petition for rehearing en banc." See Defs.' Mot. at 4; Ex. 2 to Defs.' Mot. [Docket Entry 6-2] (Apr. 11, 2013); Ex. B to Am. Compl. However, Sibley had not filed a petition for a rehearing en banc but rather a petition for an en banc hearing. See Defs.' Mot. at 4; Ex. 2 to Defs.' Mot.

On February 5, 2013, Sibley filed a verified motion to vacate and for clarification of the January 16, 2013 "order," in which he indicated that the court ruled on what was purportedly his "'petition for rehearing en banc' [but] that [he] never filed such a petition for rehearing en banc nor could he as the only Order entered in this matter was the January 16, 2013[] Order." See Am. Compl. ¶ 9(d) (emphasis in original).

---

[2] The issuing judges named on the January 16, 2013 "order" are Chief Judge Washington and Associate Judges Glickman, Fisher, Blackburne-Rigsby, Thompson, Oberly, Beckwith, Easterly, and McLeese.

[3] The government claims that the January 16, 2013 "order" was not mailed to Sibley; Sibley claims that it was. Compare Defs.' Mot. at 13, with Pl.'s Opp'n to Defs.' Mot. to Dismiss [Docket Entry 9] at 3 [Apr. 22, 2013]. Even assuming the veracity of Sibley's allegations, as required at this stage, the "order" was still never entered on the docket.

On February 6, 2013, the court issued a per curiam order[4] on the BOEE matter, denying Sibely's petition for a hearing en banc and denying his motion to vacate the January 16, 2013 "order" because "no order was entered." See Ex. C to Am. Compl. Then, on March 13, 2013, the court granted the BOEE's motion to dismiss in a per curiam order,[5] noting that "[a]ny issues raised in the petition for review are now moot as the Electoral College previously met and President Obama received a majority of the votes." See Ex. D to Am. Compl.

Sibley alleges that the actions of Court of Appeals judges "raise a reasonable suspicion[] of malfeasance and corruption" and infringed various of his constitutional rights; he requests nominal, actual, and punitive damages – jointly and severally – totaling $1,075,001.00, as well as a declaratory judgment against the Court of Appeals judges. See Am. Compl. ¶¶ 22(b), 28-29 (internal quotation marks omitted). He additionally contends that the "January 16, 2013[] Order and the February 6, 2013[] Order are internally inconsistent" and that "a felony has been committed in violation of 18 U.S.C. § 2071 and/or 28 U.S.C. § 951." See id. ¶ 20. "[T]he only acceptable remedy," he insists, "is for the Court of Appeals Defendants to be publicly polled as to which is a true order of that Court." See id. ¶ 22(b). Sibley also seeks nominal, actual, and punitive damages totaling $1,075,001.00 from "Jane Doe" for "issuing a forged District of Columbia Court Order" which Sibley alleges violated his First Amendment rights. See id. ¶¶ 24-26.

---

[4] The February 6, 2013 per curiam order was issued by Chief Judge Washington and Associate Judges Glickman, Fisher, Blackburne-Rigsby, Thompson, Oberly, Beckwith, Easterly, and McLeese.

[5] The March 13, 2013 per curiam order was issued by Associate Judge Thompson and Senior Judges Terry and Reid.

## **STANDARD OF REVIEW**

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court – Sibley here – bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (omission in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

## **DISCUSSION**

### I. Absolute judicial immunity bars claims for damages against all judicial defendants.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ." Pierson v. Ray, 386 U.S. 547, 553-54 (1967). Stated differently, "[j]udges enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." Sindram v.

Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."  Stump v. Sparkman, 435 U.S. 349, 356 (1978).  Immunity likewise extends to court clerks who perform "tasks that are an integral part of the judicial process."  See Sindram, 986 F.2d at 1460.

Defendants argue that Sibley has failed to state a claim against them because absolute judicial immunity prohibits any claim for damages against Judge Macaluso, the Court of Appeals judges, and "Jane Doe."  The Court agrees.  All of Sibley's allegations against these defendants stem from actions taken in their judicial capacities or in the course of performing tasks integral to the judicial process and are thus entitled to absolute judicial immunity.  It cannot be maintained that Judge Macaluso or any of the Court of Appeals judges acted in "clear absence of all jurisdiction."  See Stump, 435 U.S. at 357 (internal quotation marks omitted).  To the contrary, they were all acting in their official capacities while presiding over matters of litigation in which Sibley was plaintiff.

As Sibley has done in prior cases unsuccessfully brought against various judicial officers in this Court, he "asserts without support that the actions of the judicial defendants are not entitled to judicial immunity."  See Sibley v. U.S. Supreme Court, 786 F. Supp. 2d 338, 343 (D.D.C. 2011).  But once again, "[Sibley] is incorrect, and all judicial defendants are in fact entitled to judicial immunity."  See id.; see also Sibley v. Alito, 2009 No. 08-1797, WL 1649491, at *1 (D.D.C. June 11, 2009) ("The issue he sought leave of this Court to appeal . . . whether claims against Justices and officers of the Supreme Court for official acts are barred by judicial immunity – is not only well settled, but it has been decided against Mr. Sibley in a nearly identical case he filed previously in this jurisdiction." (emphasis in original) (citation omitted));

7

Sibley v. Breyer, 456 F. Supp. 2d 43, 45 (D.D.C. 2006) ("[T]he doctrine of absolute judicial immunity represents an absolute bar to Mr. Sibley's claims . . . ."). By seeking to "protect[] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants," the judicial immunity doctrine serves to quash precisely the sort of unmeritorious claims that, once again, Sibley advances. See Forrester v. White, 484 U.S. 219, 225 (1988).

### A.  Judge Macaluso

Sibley alleges that Judge Macaluso's denial of his motion to release her trial calendar violated his "First Amendment presumptive right of access to court proceeding" and "constitutes irreparable harm." See Am. Compl. ¶ 15. Yet the action about which Sibley complains – ruling on a motion – is plainly within Judge Macaluso's judicial capacity and thus protected by absolute immunity. See Sindram, 986 F.2d at 1460; see also U.S. Supreme Court, 786 F. Supp. 2d at 344.

In his opposition, Sibley attempts to overcome judicial immunity by characterizing Judge Macaluso's denial of his request to release her trial calendar as a "ministerial," non-judicial act to which immunity does not attach. See Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n") [Docket Entry 9] at 5 [Apr. 22, 2013]. But a presiding judge ruling on a motion at a hearing in open court – as Judge Macaluso was doing – is unambiguously a judicial act. Sibley is correct that absolute judicial immunity does not extend to some "acts that simply happen to have been done by judges," but his effort to portray Judge Macaluso's actions as "ministerial" is futile. See Forrester, 484 U.S. at 227. It is without question that ruling on a motion falls within the scope of judicial immunity. See Wagner v. Ellis, 1997 No. 96-5248, WL 255259 at *1 (D.C. Cir. Apr. 14, 1997) (per curiam) (citing Stump, 435 U.S. at 356-59).

Sibley includes in his opposition to the current motion an additional allegation[6] that Judge Macaluso "delayed discovery." See Opp'n at 2. This alleged conduct is also protected by absolute judicial immunity because the timing of her handling of the case is within Judge Macaluso's judicial capacity and discretion. See U.S. Supreme Court, 786 F. Supp. 2d at 344. Sibley's claim that Judge Macaluso willfully and unnecessarily delayed discovery is of no avail because "judicial immunity is not overcome by allegations of bad faith or malice." See Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam).

Sibley appears to seek damages against Judge Macaluso in her individual capacity, but he has not identified any act taken by Judge Macaluso outside of her judicial capacity. See Am. Compl. ¶ 5. Hence, Sibley's allegations fail to state a claim because Judge Macaluso acted within her official capacity and is entitled to absolute judicial immunity.

### B. Court of Appeals Judges

Sibley also seeks damages from the Court of Appeals judges for "refusing to timely address [his] claims," which he contends "had and continue to have an unlawful chilling effect on [his] rights to Petition and Access Court and is a Systematic Denial of Access to an Impartial Court, secured to [him] by the First, Fifth, Ninth and Tenth Amendments to the United States Constitution and D.C. Code § 11-1001.11(b)(1)." See Am. Compl. ¶ 28. Absolute judicial immunity bars these claims as well because they originate from actions that fall squarely within the Court of Appeals judges' judicial capacities: deciding when to rule on pending motions, ruling on pending motions, and dismissing a case. See Wagner, 1997 WL 255259, at *1; Sindram, 986 F.2d at 1460; U.S. Supreme Court, 786 F. Supp. 2d at 344.

---

[6] Sibley appears to make a motion for leave to further amend his amended complaint to incorporate additional factual allegations that he includes in a declaration submitted with his opposition. See Opp'n at 1 n.1. Pursuant to Federal Rule of Civil Procedure 15(a), the Court will consider the additional allegations.

9

With respect to the Court of Appeals judges, Sibley asserts that immunity does not apply because their purported "failure to act" is "<u>outside</u> the scope of the jurisdiction of the Court of Appeals Defendants." <u>See</u> Opp'n at 6 (emphasis in original). But determining when to rule on pending claims and motions is certainly within the jurisdiction of the Court of Appeals judges. <u>See</u> <u>U.S. Supreme Court</u>, 786 F. Supp. 2d at 344; <u>see also</u> <u>Mireles</u>, 502 U.S. at 13 (for immunity analysis, "the relevant inquiry is the nature and function of the act, not the act itself" (internal quotation marks omitted)). Moreover, Sibley's argument that the Court of Appeals judges "intentionally mooted" his case ignores that "[t]he purity of [judges'] motives cannot . . . be the subject of judicial inquiry." <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335, 347 (1871). Because "immunity applies even when the judge is accused of acting maliciously and corruptly," Sibley's "intentional mooting" argument is, at best, irrelevant. <u>See</u> <u>Pierson</u>, 386 U.S. at 554.

Like his claim against Judge Macaluso, Sibley seeks damages against the Court of Appeals judges in their individual capacities, but he only complains of actions taken within their official judicial capacities. <u>See</u> Am. Compl. ¶ 6. Thus, Sibley's allegations fail to state a claim because the Court of Appeals judges acted within their judicial capacities and are entitled to absolute judicial immunity.

### C. "Jane Doe"

"[C]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." <u>Sindram</u>, 986 F.2d at 1460; <u>see also</u> <u>Hilska v. Suter</u>, 308 Fed. App'x 451, 452 (D.C. Cir. 2009) (<u>per curiam</u>) ("[C]lerks enjoy absolute immunity from damages for performance of tasks that are an integral part of the judicial process . . . ."). Sibley's claim against "Jane Doe" arises from her actions as a clerk for the D.C. Court of Appeals. He seeks damages from Doe for "issuing a forged District of Columbia Court Order" which he

10

claims "had and continue[s] to have an unlawful chilling effect on [his] rights to Petition and Access secured to [him] by the First Amendment." See Am. Compl. ¶ 24.

Putting aside Sibley's accusation that the "order" was "forged,"[7] preparing, entering, and issuing orders are tasks that are "integral part[s] of the judicial process" and entitled to absolute judicial immunity. See Sindram, 986 F.2d at 1460. Sibley's claim against Doe accordingly fails. Moreover, given that the docket for the BOEE matter reflects that the January 16, 2013 "order" was never entered, the February 6, 2013 order was correct in noting that "no order was entered on January 16, 2013." See Ex. C to Am. Compl.

Sibley has sued Doe "solely in her individual capacity," but has not identified any acts taken by Doe outside the performance of tasks within the judicial process. See Am. Compl. ¶ 7. Hence, Sibley's allegations fail to state a claim because Doe acted within her capacity as a court clerk and is entitled to absolute immunity.

## II. Sibley lacks standing to pursue a declaratory judgment.

Although judicial immunity prohibits all claims for money damages, judicial actors still may be subject to suit for declaratory relief. See Forrester, 484 U.S. at 228-29. The party claiming the right to a declaratory judgment – Sibley here – must nonetheless establish that he has the "irreducible constitutional minimum of standing" required by Article III of the U.S. Constitution. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Specifically, Sibley must allege (1) an "injury in fact" which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable

---

[7] The only inaccuracy in the January 16, 2013 "order" appears to be a minor typographical error as Sibley had petitioned for a hearing en banc rather than the rehearing en banc referred to in the "order." There is no information in the record that supports Sibley's conclusion that because the January 16, 2013 "order" contained this typographical error, it was therefore a "forgery."

decision." See id. at 560-61 (citations and internal quotation marks omitted); see also Newdow v. Roberts, 603 F.3d 1002, 1009-13 (D.C. Cir. 2010) (applying the Lujan framework for standing analysis when examining a claim for a declaratory judgment against the Chief Justice and others).

Because Sibley has suffered no injury in fact as a result of the actions of Judge Macaluso and the Court of Appeals judges, he lacks the requisite standing to pursue declaratory relief against them. Even if Sibley had proper standing, moreover, the Court would still, in its discretion, decline to grant declaratory relief. See 28 U.S.C. § 2201(a) (authority of a court to grant a declaratory judgment is permissive, not mandatory). "Simply stated, neither the public interest, nor the interests in practical judicial administration, would be served by a federal court reviewing the decisions of our local judicial officers who are acting pursuant to their judicial authority." Hoai v. Superior Court, 539 F. Supp. 2d 432, 435 (D.D.C. 2008), aff'd, 344 Fed. App'x 620 (D.C. Cir. 2009) (per curiam).

### A. Judge Macaluso

Sibley seeks a declaratory judgment finding that Judge Macaluso's denial of his request to release her trial calendar amounted to a First Amendment violation.[8] But Sibley has not alleged an injury for standing purposes because no "invasion of [any] legally protected interest" has occurred, let alone an invasion which is "concrete and particularized" and "actual or imminent." See Lujan, 504 U.S. at 560 (internal quotation marks omitted). Sibley cites no authority for the peculiar proposition that he has a right to a judge's personal trial calendar flowing from the First Amendment. While he points to cases involving a First Amendment right

---

[8] Sibley also asks this Court, among other things, to retain jurisdiction of his claim against Judge Macaluso, "enforce this declaratory degree [sic] if subsequently violated by Defendant Macaluso," and award "reasonable costs, disbursements and attorney fees." See Am. Compl. ¶ 13.

to certain court proceedings, a fair reading of these cases demonstrates that "[i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute." See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). Moreover, the qualified right to inspect certain court proceedings derives from a broader "general right to inspect and copy public records and documents," which would not include a judge's personal trial calendar. See id. at 597 (emphasis added) (footnote omitted). None of the cases that Sibley cites specifically address a judge's trial calendar, but instead refer to documents and proceedings that – unlike a personal trial calendar – are part of the official judicial record.[9] Sibley also refers to several cases where he believes the plaintiffs did not suffer an injury in fact. See Opp'n at 11. But, as defendants correctly point out, "[n]one of these cases have any bearing on the issue of constitutional standing for declaratory relief."[10] See Defs.' Reply to Opp'n [Docket Entry 10] at 1 n.2 (Apr. 29, 2013).

Sibley also fails to demonstrate how the denial of his request to access Judge Macaluso's trial calendar illustrates that he "is suffering an ongoing injury or faces an immediate threat of injury." See Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011). "In a case of this sort, where the plantiff[] seek[s] declaratory . . . relief, past injuries alone are insufficient to establish standing." Id. Thus, even if Sibley had a recognized right to Judge Macaluso's trial calendar –

---

[9] See Press-Enter. Co. v. Superior Court, 478 U.S. 1, 10-13 (1986) (First Amendment right of access applies to transcripts of preliminary hearing in a state criminal proceeding); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 610-11 (1982) (a state highest court's interpretation of a state statute to exclude the press and general public from testimony of victims under the age of eighteen at trials for certain sexual offenses violates the First Amendment); Mokhiber v. Davis, 537 A.2d 1100, 1109, 1111 (D.C. 1988) (per curiam) (presumptive right of public access applies to motions filed with the court concerning discovery, evidence submitted with such motions, and the court's depositions; presumptive right of public access does not apply to depositions, interrogations, or the documents obtained in discovery that are neither submitted as evidence at trial nor filed in connection with motions).

[10] Sibley cites Mokhiber, 537 A.2d at 1104, Globe Newspaper Co., 457 U.S. at 605, and Gannett Co. v. DePasquale, 443 U.S. 368, 386 n.15 (1979). None of the plaintiffs in these cases sought a declaratory judgment.

the denial of which constituted an injury – that injury in and of itself is inadequate to confer standing for a declaratory judgment because Sibley has not shown how that injury is ongoing or how he is under an immediate threat of a likely future injury. Indeed, the St. Albans matter over which Judge Macaluso presided appears to be resolved except for an issue regarding attorneys' fees.[11] See Ex. 1 to Defs.' Mot. [Docket Entry 6-1] at 1 (Apr. 11, 2013).

To the extent Sibley accuses Judge Macaluso of intentionally delaying the St. Albans matter and argues that this delay gives rise to an injury in fact, he does not plead any facts in support of that claim. He admits as much because his only hope for proof of that claim is Judge Macaluso's personal trial calendar, to which he has no right. See Opp'n at 12. But even accepting his accusation as true and further assuming arguendo that a delay could possibly constitute an injury, Sibley still lacks standing because this hypothetical injury is neither ongoing nor presents an immediate threat. See Dearth, 641 F.3d at 501.

### B. Court of Appeals Judges

Sibley also fails to establish an injury conferring standing with respect to his claim for declaratory relief against the Court of Appeals judges. According to Sibley, the undocketed January 16, 2013 "order" referring to a rehearing en banc on the BOEE matter and the February 6, 2013 order referring to a hearing en banc on the same matter are "internally inconsistent,"

---

[11] Moreover, by requesting a declaratory judgment finding that Sibley is entitled to Judge Macaluso's trial calendar, Sibley essentially asks this Court to review Judge Macaluso's ruling on his motion in D.C. Superior Court. This request runs afoul of the well-established Rooker-Feldman doctrine, which holds that "federal district courts lack jurisdiction to review judicial decisions by state and District of Columbia courts." Richardson v. District of Columbia Ct. of Appeals, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (citing District of Columbia v. Feldman, 460 U.S. 462, 476 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923)). To the extent Sibley seeks review of Judge Macaluso's ruling, his proper avenues are the D.C. Court of Appeals and, ultimately, the U.S. Supreme Court. This Court, however, is without jurisdiction to review Judge Macaluso's decision, and this absence of jurisdiction serves as an additional, sufficient basis for dismissing Sibley's claim for declaratory relief against Judge Macaluso.

which gives him "reasonable suspicions of malfeasance and corruption." See Am. Compl. ¶¶ 20, 21 (internal quotation marks omitted). But nowhere does Sibley even attempt to explain how he suffered an injury as a result of obtaining an undocketed order that contained a minor typographical error, which was subsequently corrected in a docketed order. He pleads no facts to demonstrate that the error in any way affected his procedural or substantive rights or the ultimate dismissal of his case. Though Sibley has other pending litigation before the District of Columbia Court of Appeals and laments that, as a result of the allegedly inconsistent orders, his "faith has now been shattered that any order . . . accurately reports the decision of that Court," he does no more than speculate that he will again be subject to future discrepancies. See Opp'n at 12 (emphasis in original); Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1272-74 (D.C. Cir. 1994) (Plaintiffs lacked standing to pursue injunctive and declaratory relief because they "have said nothing to indicate that future violation of their rights is even remotely probable."). As such, this speculation fails to show that "the threat of repetition" is "sufficiently real and immediate . . . to meet Article III's injury requirement." See Haase v. Sessions, 835 F.2d 902, 911 (D.C. Cir. 1987) (citation and internal quotation marks omitted). Sibley essentially concedes this issue when he asks this Court to "[r]etain jurisdiction of this matter to enforce this declaratory degree [sic] if subsequently violated by Court of Appeals Defendants." See Am. Compl. ¶ 22(c).[12]

Lastly, even if Sibley could establish an injury for standing purposes, that injury would not be redressed by the order from this Court that he seeks. See Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 442 (D.C. Cir. 1999) ("Redressability must be satisfied now to establish jurisdiction." (emphasis in original)). Indeed, the February 6, 2013 order corrected the trivial

---

[12] Like his claim for declaratory relief against Judge Macaluso, Sibley also seeks, among other things, "reasonable costs, disbursements, and attorney fees." See Am. Compl. ¶ 22(d).

15

mistake in the January 16, 2013 "order," and noted that "no order was entered on January 16, 2013." See Ex. C to Am. Compl.  Further, the BOEE matter has been dismissed.

In short, Sibley cannot establish that he suffered an injury due to the actions of Judge Macaluso or the Court of Appeals judges.  He has no standing to pursue declaratory relief, and his claims for such relief will be dismissed.

## CONCLUSION

For these reasons, defendants' motion to dismiss will be granted.  A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 26, 2013